IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRADARIO BRIM,

                Plaintiff,

  v.

CHRISTOPHER STEVENS, JAY VAN LANEN,
WILLIAM SWIEKATOWSKI, JOHN KIND,
SCOTT ECKSTEIN, CATHY FRANCOIS, and
AMY ZIRBEL,

                Defendants.

OPINION and ORDER

18-cv-24-jdp

---

Pro se plaintiff Fradario Brim is a Muslim prisoner incarcerated at Wisconsin Secure Program Facility (WSPF). He brings First, Eighth, and Fourteenth Amendment against officials at Green Bay Correctional Institution (GBCI), which is where Brim was incarcerated before his transfer to WSPF in August 2018. Brim alleges that the defendant prison officials conspired to send him to disciplinary segregation and administrative confinement because of his religious practices and his filing of *Brim v. Donovan*, No. 15-cv-658 (W.D. Wis. Oct. 13, 2015).

Four motions are pending before the court: (1) defendants' motion for partial summary judgment alleging that Brim failed to exhaust his administrative remedies, Dkt. 26; (2) Brim's motion for leave to file a sur-reply in opposition to defendants' summary judgment motion, Dkt. 34; (3) Brim's motion for sanctions against defendants, Dkt. 42; and (4) a letter from Brim alleging that his legal mail is being tampered with, which I will construe as a motion for injunctive relief, Dkt. 38.

A. Exhaustion

Defendants have filed a motion for partial summary judgment based on Brim's alleged failure to exhaust his administrative remedies on some of his claims as required under the

Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a). The administrative exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Its purpose is not to protect defendants but to give prison officials an opportunity to resolve complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537–38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

To comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Typically, this includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, defendants bear the burden of establishing that a plaintiff failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Here, defendants have provided a declaration from the institution complaint examiner at GBCI stating that Brim never filed internal grievances about (1) his First Amendment retaliation claim against GBCI Security Director John Kind for transferring Brim out of general population into the treatment center's receiving unit; (2) certain aspects of his Eighth Amendment conditions of confinement claim; and (3) certain of his retaliation and substantive due process claims against captains Christopher Stevens and Jay Van Lanen. Dkt. 28. I address each of these issues in turn.

1. **First Amendment claim against Kind**

Defendants contend that Brim never filed an offender complaint regarding his allegation that Kind transferred him out of general population and into the treatment center's receiving unit for retaliatory reasons. In his opposition brief, Brim contends that he "did exhaust his administrative remedies on all of [his] claims with the exception [of] one, his First Amendment claim alleging that Security Director Kind transferred him out of general population and into the Treatment Center's receiving unit for retaliatory reasons." Dkt. 31, at 1. This concession, coupled with the absence of any evidence in the record indicating that Brim pursued available administrative remedies for this claim, would normally require that this claim be dismissed.

However, in an unsolicited sur-reply, Brim contradicts his earlier concession, arguing that, in fact, he "did not concede that he failed to exhaust his claim regarding [the] retaliatory transfer to the treatment center."[1] Dkt. 34, at 1. Arguments raised for the first time in a reply brief (and, by extension, a sur-reply brief) are typically considered waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (arguments that first appear in a reply brief are deemed waived). But I will be flexible here given Brim's pro se status and will address the arguments he makes in the sur-reply.

Brim argues that he exhausted his First Amendment retaliation claim against Kind because the issue was "resolved informally" when "Brim complained to . . . Kind's immediate supervisor, Deputy Warden S. Scheuler, who remedied the reprisal and had Brim returned to general population." Dkt. 34, at 2. Once Brim was returned to general population, the problem

---

[1] Although sur-replies are disfavored, I will grant Brim's motion for leave to file one in this case in light of his pro se status. Dkt. 34.

was resolved to his satisfaction and no further action was necessary. The Court of Appeals for the Seventh Circuit has held that "[p]risoners are not required to file additional complaints or appeal favorable decisions" in cases where the prisoner "has won all of the relief that is available . . . . When there is no possibility of any further relief, the prisoner's duty to exhaust available remedies is complete." *Thomas v. Snyder*, 428 F.3d 690, 696–97 (7th Cir. 2005) (quoting *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)). So if Brim's version of events is accurate, he may have exhausted his First Amendment claim against Kind.

Because Brim raised this argument for the first time in a sur-reply, defendants have not had an opportunity to address it. As discussed below, I am ordering an evidentiary hearing on the First Amendment and substantive due process claims against Stevens and Van Lanen. Defendants may present any responsive arguments about Brim's retaliation claim against Kind at that time. I will issue a ruling on the retaliation claim against Kind after the hearing.

## 2. Eighth Amendment conditions-of-confinement claim

Defendants contend that Brim failed to exhaust four of the six grievances that comprise his Eighth Amendment conditions-of-confinement claim. I previously granted Brim leave to proceed on the following allegations:

1. He is forced to wear soiled and filthy clothing.
2. He is allowed to shower only twice per week.
3. He is forced to sleep on a threadbare mattress.
4. He endures "daily smearing of feces."
5. He is subjected to the constant smell of sewage.
6. He is exposed to fumes of incapacitating agents that cause him to choke.

Dkt. 8, at 8. There is no dispute that Brim successfully exhausted the issues of the threadbare mattress and pepper spray fumes. *See* Dkt. 28-4 (July 5, 2017 ICRS complaint). But defendants contend that Brim never filed grievances about the soiled and filthy clothing, twice weekly showers, or daily smearing of feces.

Defendants are mistaken that Brim never filed a grievance related to showering. Brim's July 5, 2017 ICRS complaint included an allegation that he was not being permitted to shower when needed. *See id.*, at 14 ("I am being subjected to . . . constant intake of pepper spray and gas without a shower . . . ."). Although Brim framed the allegation as related to his pepper spray complaint rather than as a stand-alone grievance, it was nonetheless sufficient to alert the prison to the showering issue. I will deny defendants' motion for summary judgment on Brim's Eighth Amendment claim based on his access to showers.

Brim contends that the grievances he filed complaining about other aspects of the conditions of his confinement were sufficient to put defendants on notice of the "totality" of his claims. Dkt. 34, at 5. *See, e.g.*, Dkt. 28-4 (complaining of bright lights, excessive noise, exposure to pepper spray without a shower, worn mattress, graffiti in his cell, lack of meaningful recreation, and heat); Dkt. 28-5 (complaining of worn out mattress); Dkt. 28-6 (complaining about excessive use of pepper spray). But these grievances tell defendants nothing about the condition of Brim's clothing or whether he is subject to daily smearing of feces. A grievance must "object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). At minimum, this requires identifying the relevant shortcoming. Brim has not exhausted his claims based on the condition of his clothing or the smearing of feces.

As for the claim about the constant smell of sewage, the record shows that Brim did file a grievance on this issue, but that it was still pending at the time he filed this lawsuit on January

10, 2018. *See* Dkt. 28-7, at 9 (indicating that a final decision dismissing Brim's complaint was made on January 29, 2018). This constitutes a failure to exhaust for the purposes of 42 U.S.C. § 1997e(a). *See Winder v. Sheahan*, 52 F. App'x 833, 834 (7th Cir. 2002) (dismissing § 1983 claim for failure to exhaust because litigant filed lawsuit while his administrative grievance was still pending). Once again, Brim concedes this point in his initial opposition brief, Dkt. 31, at 5 ("With respect to the constant smell of sewage, if the defendants are correct, all other claims should survive."), but then walks back his concession in his unsolicited sur-reply. Dkt. 34, at 5. But even in his sur-reply, Brim does not meaningfully contest that the sewage smell grievance remained pending, and therefore unexhausted, at the time he filed this lawsuit.

I will grant defendants summary judgment on the portions of Brim's Eighth Amendment conditions of confinement claim relating to the soiled and filthy clothing, the daily smearing of feces, and the constant smell of sewage. Brim may proceed on the portions of his claim concerning the threadbare mattress, the fumes of incapacitating agents, and being denied adequate opportunities to shower.

### 3. Retaliation and substantive due process claims against Stevens and Van Lanen

Defendants contend that Brim failed to exhaust his First Amendment retaliation and Fourteenth Amendment substantive due process claims against Stevens and Van Lanen. I granted Brim leave to proceed on these claims based on his allegation that Stevens and Van Lanen issued false disciplinary charges against him and bribed inmates for fabricated testimony about him in order to land him in disciplinary segregation. Brim alleges that they did so in retaliation for his religious practices and legal activity.

To exhaust allegations that relate to a conduct report, inmates must raise them as defenses at the disciplinary hearing and on appeal to the warden. *See* Wis. Admin. Code DOC § 303.82(1) (2017). The warden's decision is final regarding the sufficiency of the evidence, but an inmate may proceed to assert claims of procedural error using the Inmate Complaint Review System (ICRS) process. *Id.* § 303.82(4).

### a. Disciplinary hearing and appeal

As a threshold matter, the parties dispute whether Brim raised the issue of retaliation at his disciplinary hearing and on appeal to the warden: Brim says he did, and defendants say he didn't. The hearing officer's report supports defendants' position. *See* Dkt. 28-2, at 8–9. On the part of the DOC-84 form labeled "Inmate Statement: (summary)," the hearing officer summarized Brim's testimony in three cursory sentences: "Per 303.04 I have not conspired against or with anyone. I admit the stuff I do and I didn't do it. This is just people gossiping." *Id.* at 8. There is no mention of retaliation by Stevens or anyone else. But Brim says that he did raise the claim of retaliation and fabrication at his conduct hearing, and that the hearing officer simply failed to record his objections on the DOC-84 form. Dkt. 31, at 3.

The parties further dispute what Brim argued on appeal to the warden. Defendants provide what they say is a true and accurate copy of the appeal file, Dkt. 28-2, at 10–12. The file includes a two-page statement from Brim in which he challenges the sufficiency of the evidence underlying the conduct report but makes no mention of retaliation. *Id.* at 11–12. But Brim says that he attached a second statement to his appeal forms in which he complained about the hearing officer's failure to document Brim's objection at the hearing and stressed his claims of fabrication and retaliation by Stevens and other GBCI staff. Dkt 31, at 4. He attaches what he says is a copy of this second statement to his opposition brief, Dkt. 31-1, at 11–12,

7

which is dated June 15, 2017—the date Brim submitted his appeal paperwork. *See* Dkt. 28-2, at 10.

Defendants say that GBCI has no record of having received this document. Dkt 32, at 3. They also say that, even assuming that Brim submitted it with his appeal, the statement was not sufficient to put them on notice of the retaliation and substantive due process claims because it did not specifically note that Stevens and Van Lanen bribed inmates to fabricate testimony. Brim's second statement states as follows:

> At my [conduct report] hearing I could tell it was set up so it was no way I could beat the CR or document anything. Lt. Elsinger continu[ally] objected to questions I had for Capt. Stevens about why he fabricated CR #2843639 and why was he attacking me for being Muslim. Lt. Elsinger refused to accept these questions claiming they were not relevant.
>
> Its obvious Lt. Elsinger was bias. Please look at both the DOC 84 and 84A. Lt. Elsinger only documented 10% of what I said and only wrote down one answer from Capt. Stevens when I asked him well over ten questions. . . .
>
> The truth of the matter is, GBCI staff has retaliated against me because I filed a lawsuit and because of my Islamic faith. It's obvious the CR written by Capt. Stevens is fabricated and its very clear that Lt. Elsinger was bias by the way he ill conducted the CR hearing, not documenting my claims of fabrication and retaliation and objecting to multiple questions I posed to Capt. Stevens.

Dkt. 31-1, at 11–12. Although Brim did not specifically discuss the alleged bribing of inmates, this statement was nonetheless sufficient to "alert[] the prison to the nature of the wrong for which redress is sought," which is all that is required. *Strong*, 297 F.3d at 650. The allegations of bribery are encompassed within the more general allegation that the conduct report was fabricated. Likewise, the fact that Brim did not specifically mention Van Lanen in his second statement is not a bar to exhaustion. A prisoner need not name any particular defendant in a grievance to properly exhaust his claim. *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Defendants ask me to disregard the version of events that Brim lays out in his briefing because Brim has not provided a declaration swearing that he both raised the retaliation claim at his hearing and submitted the second statement to the warden with his appeal. But Brim's verified complaint noted the hearing officer's failure to document the retaliation allegations and his second statement to the warden. *See* Dkt. 1, ¶ 26. This is sufficient for the purposes of Federal Rule of Civil Procedure 56(e). *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (facts in verified complaints declared true under penalty of perjury are treated the same as facts in an affidavit).

Ultimately, the issue of whether Brim raised these issues at the appropriate junctures boils down to a swearing contest. Because it implicates matters of credibility, I cannot resolve it on summary judgment and must instead hold an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("Roberts may have been lying about having filed a grievance—but alternatively the defendants may have been lying when they denied there was any record of such a grievance. A swearing contest requires an evidentiary hearing to resolve, and none was held."). I will direct the clerk of court to set a *Pavey* hearing and to issue a writ of habeas corpus ad testificandum for Brim's appearance. Brim should bring any evidence he has that supports his version of events. He should also consider whether there are any witnesses who can corroborate his version of events. He should refer to the court's preliminary pretrial conference order, Dkt. 24, for guidance on how to call witnesses to appear at the hearing.

    b. **Alternative avenues of exhaustion**

Brim contends that no *Pavey* hearing is necessary because, in addition to raising retaliation-related allegations in his disciplinary hearing and appeal, he pursued alternate

9

avenues of relief that suffice for exhaustion purposes. He offers four different arguments in support, which I discuss in turn.

First, Brim argues that he properly exhausted his retaliation and substantive due process claims against Stevens and Van Lanen with a June 19, 2017 letter to the warden objecting to the warden's decision to affirm the guilty finding from the disciplinary hearing. In that letter, Brim explicitly mentioned his allegation of retaliation. *See* Dkt. 31-1, at 23–24 ("I'm sure you are aware of my complaint that CR #2843639 is fabricated and was designed to punish me for filing Case No. 15-cv-658. . . . This is not a harmless error—this was clear retaliation and an abuse of power."). But proper exhaustion requires "utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). In this context, that meant initially raising any issues related to the fabricated conduct report at the disciplinary hearing and on appeal to the warden. Brim sent this letter outside the bounds of the formal administrative process and after the warden's final decision had been rendered, so it was not a proper means of exhaustion.

Second, Brim points to a June 5, 2017 ICRS complaint that he submitted alleging retaliation. *See* Dkt. 28-3, at 8 ("Capt. Stevens fabricated conduct report #2843639 as a ploy to get me placed on administrative confinement status and in retaliation for filing case no. 15-cv-658-jdp civil suit against GBCI staff."). Because it implicated a conduct report, the complaint was rejected as outside the scope of the ICRS process. *See id.*, at 2. Brim contends that it was nonetheless sufficient to "alert[] the prison to the nature of the wrong for which redress is sought." Dkt. 31, at 2 (quoting *Strong*, 297 F.3d at 650). But as already discussed, proper exhaustion of a conduct report-related claim requires raising the issue at the disciplinary hearing and on appeal to the warden. "Where a grievance is rejected on procedural grounds,

rather than on the merits, the inmate has failed to exhaust. In Wisconsin, one such procedural reason for rejecting a grievance is scope." *Nelson v. Franson*, No. 12-cv-573, 2014 WL 6982292, at *2 (W.D. Wis. Dec. 10, 2014) (citing *Maddox*, 655 F.3d at 720). Thus, the June 5, 2017 ICRS complaint did not exhaust Brim's claims.

Third, Brim contends that, even assuming that filing an ICRS complaint about the fabricated conduct report was "insufficient for exhaustion purposes . . . other claims raised in the complaint, such as Stevens and other staff wanting [Brim] disciplined for filing the 2015 lawsuit and offering multiple inmate bribes to falsely inform on [him,] should survive summary judgment because these issues are not outside the scope of the ICRS." Dkt. 31, at 2. In other words, Brim argues that defendants' attempts to discipline him and bribe other inmates were not "related to" the fabricated conduct report. "In determining whether an inmate complaint raises issues 'related to' a conduct report, the relevant question is whether the subject of the inmate complaint would have been germane to the question of the prisoner's guilt or innocence of the conduct report." *Ravenwood-Alexander v. Beahm*, No. 17-cv-7, 2018 WL 4188472, at *7 (E.D. Wis. Aug. 31, 2018) (internal quotation marks omitted). Here, defendants' retaliatory animus and alleged bribery bear directly on Brim's innocence of the allegations at issue in the conduct report; indeed, on Brim's theory, there would have been no conduct report if not for defendants' desire to retaliate. Therefore, Brim's claims are 'related to' the conduct report and should have been raised at the disciplinary hearing and on appeal to the warden. They were not exhausted through the June 5, 2017 ICRS complaint.

Fourth, Brim argues in his sur-reply that his second retaliation-related ICRS complaint was sufficient to exhaust his retaliation claims because it was dismissed on its merits rather

than on procedural grounds. Specifically, on October 10, 2017, Brim filed a grievance alleging the following:

> Since Captain Stevens fabricated a conduct report on me in June, 2017, he has continued a campaign of retaliation against me. . . . After writing Captain Stevens about missing mail of mine and being on mail monitor, Captain Stevens told me that he has confiscated and monitored my mail. When I told Captain Stevens that he wouldn't get away with destroying my mail and for fabricating the assault-conspiracy conduct report I received, Captain Stevens stated, "I already have, you see you['re] on [administrative confinement] don't you." In Captain Stevens own words he framed me with a false charge with the intentions of getting me placed on AC.

Dkt. 33-1, at 11–12. At the initial stage of review, the complaint examiner recommended that the warden dismiss the grievance. She provided the following justification:

> Inmate Brim complains when he accused Capt. Stevens of fabricating a conduct report and told him he wouldn't get away with it he responded saying "I already have, you see you['re] on AC don't you?" . . . .
>
> Inmate Brim was provided with an explanation of DAI Policy 310.00.01. In addition to that, the provisions of DOC 303.32, Wis. Adm. Code, were also provided. He was also informed that, because the investigative process is regulated by state law (which protects the privacy and due process rights of staff) no further information would be given to him. Inmate Brim chose to pursue the complaint and provided a detailed written description of the events he claimed happened. Based on that statement and the sensitive nature of this incident, it is recommended this complaint be dismissed, with the modification that it be further processed pursuant to the applicable personnel rules and agreements pursuant to DAI Policy 310.00.01. Consequently, no further action will be taken by this office.

*Id.* at 2. The warden followed that recommendation and dismissed the grievance. Brim appealed. On appeal, a different examiner likewise recommended dismissal:

> The Security Director has confirmed that this matter is being investigated. Because the allegations raised have already been brought to the attention of supervisory staff and are already under

12

> review, there is no need to conduct a parallel investigation in the ICRS. The allegations are being addressed in a manner similar to DAI Policy 310.00.01. Because that investigation process is regulated by state law which protects the privacy and due process rights of staff, no further information will be given to the complainant. Therefore, it is recommended this appeal be dismissed.

*Id.* at 6. The warden followed that recommendation and dismissed the appeal.

Brim suggests that this constitutes a dismissal on the merits. He correctly notes that the Court of Appeals for the Seventh Circuit has held that an inmate's claim can be exhausted if it is decided on the merits, even if the complaint could have otherwise been dismissed on procedural grounds (such as untimeliness or falling outside the scope of ICRS). *See, e.g., Conyers v. Abitz*, 416 F.3d 580, 584–85 (7th Cir. 2005); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). It appears that Brim's complaint was dismissed because his grievance was being investigated through some other channel. Whether this constitutes a dismissal 'on the merits' sufficient to circumvent any alleged failure on Brim's part to grieve the retaliation issues through the disciplinary process is an open question. Because Brim raised this argument for the first time in a sur-reply, defendants have not had an opportunity to address it. I will give them an opportunity to do so at the *Pavey* hearing and will defer ruling on this claim.

**B. Sanctions**

Brim asks me to impose sanctions on defendants for failing to mention his second ICRS complaint in their opening partial summary judgment brief. He alleges that defendants "knew of this complaint but strategically failed to disclose it" in an effort to bolster their argument that Brim failed to exhaust his retaliation and substantive due process claims against Stevens and Van Lanen. Dkt. 42, at 3. Defendants did address the second ICRS complaint in their reply, after Brim raised it in his opposition brief. I will not sanction defendants for failing to

address every conceivable grievance in their initial brief. There is no evidence that they did so in bad faith, and I have allowed him to address the issue by considering his sur-reply.

Brim also says that he "intends to amend his complaint or supplement it to add a claim under *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995) for conspiracy to deny access to court by AAG Rebecca Paulson." *Id.* at 5. He says that in *Vasquez*, the court held that "denial of right to access courts occurred when a conspiracy to cover up 'prevented full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiff's right of access.'" *Id.* (quoting *Vasquez*, 60 F.3d at 329). In fact, the court in *Vasquez* held that the plaintiffs were *not* denied access to the court, despite the fact that a shoddy police investigation caused a delay in the release of information helpful to the plaintiffs' claims. Perhaps Brim intends to cite *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), in which the Court of Appeals for the Seventh Circuit recognized that an egregious police cover-up can, in certain circumstances, effectively deny a plaintiff judicial access. But neither case is relevant here. Defendants have not done anything akin to the conduct at issue in *Vasquez* or *Bell*. They simply opted not to discuss Brim's October 10, 2017 ICRS complaint in their opening brief.

## C. Mail tampering

Brim alleges that, since his transfer to WSPF, his "mail and legal materials have either been unreasonably delayed, confiscated or tampered with by GBCI officials," especially the "legal mail going to and coming from Christopher Goodvine," Brim's jailhouse lawyer (who is incarcerated at GBCI). Dkt. 38, at 1. He says that many of his letters to Goodvine have not been delivered, and that a package of legal materials that Goodvine sent Brim arrived 16 days after mailing and showed obvious signs of tampering. Brim further alleges that GBCI officials have hindered his attempts to communicate with potential witnesses, and that three such

14

witnesses have not received a single letter despite Brim having written them three times each since August 6, 2018.

Although substantive claims concerning interference with mail ordinarily belong in a separate lawsuit, Brim's allegations raised concerns about his access to the court in this case. I asked defendants to respond to Brim's allegations. Defendants submitted an initial response, Dkt. 39, followed by a request for an extension of time in which to file a response, Dkt. 43, and a second response, Dkt. 45.

In the first response, defendants stated that, although both Brim and Goodvine had filed mail-related complaints, defendants had found no evidence of inappropriate conduct on the part of GBCI staff as to the handling of Brim's mail. They also asserted that there is no evidence in the record that Brim's potential witnesses are not receiving his letters, as opposed to simply choosing not to respond. In their second response, defendants reported that "[f]urther investigation" had revealed that a segregation officer had confiscated a letter from Goodvine to Brim and "apparently forgot to get the letter back to the mailroom for processing." *Id.* at 2. They assure me that the oversight has been remedied, and that there is no evidence of any intentional mail tampering.

It does not appear that these mail-related issues have blocked Brim from litigating this case. He has timely filed several detailed briefs. He has provided no evidence that his witnesses are not receiving his letters as opposed to simply ignoring them. And although the allegation that prison officials "forgot" to place a letter back in the mail is troubling, this is not enough to justify preliminary injunctive relief. So I will deny Brim's motion for injunctive relief as to his legal mail without prejudice to his refiling it should these issues persist.

ORDER

IT IS ORDERED that:

1. Defendants motion for partial summary judgment on exhaustion grounds, Dkt. 26, is GRANTED in part and DENIED in part, consistent with the analysis above.

2. The clerk of court is directed to set a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve the factual dispute over plaintiff Fradario Brim's exhaustion of his administrative remedies.

3. The clerk of court is directed to issue a writ of habeas corpus ad testificandum for plaintiff's appearance at that hearing.

4. The parties have until January 18, 2019, to inform the court of any witnesses they intend to call.

5. Plaintiff's motion for leave to file a sur-reply, Dkt. 34, is GRANTED.

6. Plaintiff's motion for injunctive relief concerning mail tampering, Dkt. 38, is DENIED.

7. Plaintiff's motion for sanctions, Dkt. 42, is DENIED.

Entered January 4, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge