IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FRADARIO BRIM,

                    Plaintiff,

        v.
                                                    OPINION and ORDER

CHRISTOPHER STEVENS, JAY VAN LANEN,                 18-cv-24-jdp
WILLIAM SWIEKATOWSKI, JOHN KIND,
SCOTT ECKSTEIN, CATHY FRANCOIS, and
AMY ZIRBEL,

                    Defendants.


        Pro se plaintiff Fradario Brim brings claims under the First, Eighth, and Fourteenth

Amendments based on allegations of retaliation by prison officials. Defendants have filed a

motion for partial summary judgment, contending that Brim did not exhaust his administrative

remedies on some of his claims. Dkt. 26. In a previous order, Dkt. 49, I granted defendants'

motion in part. I also scheduled a hearing, under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008),

to resolve factual disputes and legal issues pertaining to the exhaustion of Brim's First and

Fourteenth Amendment claims.

        I held the hearing on February 27, 2019. For the reasons explained below, I will deny

defendants' motion as to Brim's First Amendment retaliation claim against Kind, because I

conclude that Brim's successful efforts to get relief through informal channels exhausts this

claim. But I will grant defendants' motion as to Brim's claims against Stevens and Van Lanen.

Based on the hearing evidence, I find as a matter of fact that Brim did not raise these claims

during the hearing on his conduct report or on appeal, and I conclude that his October 2017

inmate complaint did not exhaust the claims.

## A.  Exhaustion of the First Amendment claim against Kind

Defendants contend that Brim did not exhaust his administrative remedies concerning his claim that Kind put Brim in the treatment center's receiving unit for retaliatory reasons. Brim did not file an offender complaint, but Brim says he exhausted this claim by resolving it through informal channels. Specifically, Brim says that he began complaining to various officials soon after his placement in the treatment center in an effort to comply with the institution's instruction that inmates "attempt to resolve the issue" "[p]rior to filing a formal complaint." Dkt. 34-1. Eventually, Brim complained to the deputy warden, and Brim was returned to general population the next day. A prisoner is "not required to file additional complaints or appeal favorable decisions" when he "has won all of the relief that is available . . . . When there is no possibility of any further relief, the prisoner's duty to exhaust available remedies is complete." *Thornton v. Snyder*, 428 F.3d 690, 696–97 (7th Cir. 2005) (quoting *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)).

At the *Pavey* hearing, defendants argued that Brim's informal resolution of the retaliatory transfer should not be considered adequate exhaustion because of timeliness issues. They say that Brim was aware of Kind's allegedly retaliatory motivation for the transfer shortly after Brim arrived in the treatment center in October of 2016. *See* Dkt. 35, ¶ 3. Brim spent several weeks in the receiving unit before complaining to the deputy warden on December 1 and successfully resolving the issue. Were Brim to have filed a formal grievance about Kind's conduct at that point, it would have been untimely. Defendants argue that, by the same logic, Brim's informal resolution should also be considered untimely for exhaustion purposes.

I'm not sure that inmate complaint deadlines would apply to exhaustion achieved through informal dispute resolution. But I need not resolve that question, because I find that

Brim's efforts were not untimely. At the hearing, Brim testified that he began complaining about retaliation and lobbying prison officials to transfer him back to general population shortly after arriving on the receiving unit. I have no reason to doubt Brim's testimony on this point. That his efforts were not initially successful does not mean that they were untimely. I conclude that Brim exhausted this claim. I will deny defendants' motion for summary judgment on Brim's First Amendment retaliation claim against Kind.

## B. First and Fourteenth Amendment claims against Stevens and Van Lanen

Defendants also contend that Brim failed to exhaust the administrative remedies available for his First Amendment and Fourteenth Amendment claims against Stevens and Van Lanen, which are predicated on Brim's allegation that they retaliated against him by bribing inmates for false testimony about him and fabricating a conduct report in an effort to land him in disciplinary segregation. To exhaust allegations that relate to a conduct report, inmates must raise them as defenses at the disciplinary hearing and on appeal to the warden. *See* Wis. Admin. Code. § DOC 303.82(1) (2017).

Defendants' motion on this claim turns on a factual dispute. Brim says that he raised Stevens and Van Lanen's retaliation both at his hearing on June 12, 2017, and on appeal to the warden. Defendants dispute this.

I begin with the hearing. Brim says that during the hearing on the conduct report, he objected that the conduct report was fabricated and retaliatory. Brim says that the hearing officer, Captain James Elsinger, failed to note those objections on the disciplinary hearing form (known as a DOC-84).

Elsinger testified that his succinct description of Brim's statement on the DOC-84 form, *see* Dkt. 28-2, at 8, was an accurate reflection of the main points of Brim's statements at the

hearing. Elsinger's testimony on direct and cross was equivocal about whether he actually remembered the hearing or whether he was relying entirely on the written document. In response to my questions, he said that he remembered the hearing. But he could provide no detail about the hearing besides reiterating the information on the DOC-84 form. In response to questions from counsel, he phrased his responses in terms of what he "would" have done. I find that Elsinger's testimony that he accurately captured the main points of the hearing was not credible.

Brim called two inmates, Christopher Goodvine and Antonio Smith, to impeach Elsinger. Goodvine and Smith testified that they overheard Elsinger admit to Brim that he had deliberately failed to document Brim's objections on the DOC-84 form. The testimony from Goodvine and Elsinger about what Elsinger said is hearsay, which I could admit for impeachment purposes but not as affirmative evidence. But because I find Elsinger's testimony incredible even without impeachment by these two witnesses, I need not consider the testimony of Goodvine or Smith at all.

Defendants also called James Gordon, Brim's staff advocate at the disciplinary hearing. Gordon provided a more credible account of the hearing than did Elsinger. Gordon testified that Brim had requested to call as witnesses the confidential informants whose testimony furnished the basis for the conduct report. This request is not reflected on the DOC-84 form, which indicates that Elsinger did not document all of Brim's statements at the hearing. But Gordon also testified that Brim never raised objections that the conduct report was retaliatory, either during the hearing or beforehand. I found Gordon's testimony to be credible.

Brim himself, of course, testified that he raised the retaliation issue during the hearing. I do not find this testimony to be credible, primarily because Brim's credibility on this point is undermined by the written record of his appeal, to which I now turn.

With their summary judgment filing, defendants provided a complete copy of the DOC record of Brim's appeal file. According to DOC records, Brim's appeal had three pages: an appeal form (the DOC-91) and a two-page attachment explaining Brim's argument that the hearing evidence was insufficient to substantiate the charge in the conduct report. Dkt. 28-2, at 10–12. But the attachment says nothing about retaliation. In his opposition to defendants' motion, Brim provided a second attachment that he contends he included along with the other three pages. The second attachment complained about Elsinger's failure to document Brim's objections and stressed Brim's claims of fabrication and retaliation. *See* Dkt. 31-1, at 12–13.

Defendants contend that Brim didn't actually submit this second attachment. They offered testimony from Jodene Perttu and Ellen Ray, the institution complaint examiners at GBCI and Wisconsin Secure Program Facility (WSPF), respectively. Perttu testified that original copies of an inmate's conduct report, disciplinary hearing record, and appeal paperwork are stored in the inmate's social services file in the institution's records office. She testified that Brim's second statement was not included among his appeal paperwork, which suggested to her that Brim never actually submitted it. Because an inmate's social services file follows the inmate, Ray testified as to the contents of Brim's social services file at it is maintained at WSPF (now that Brim has been transferred there). She said that the relevant appeal paperwork in the file comprised three pages: the DOC-91 form, and a hand-written original of the first two-page attachment. Brim's second attachment is not in the file. Ray also testified that, in her years of experience with the DOC, papers have sometimes been missing from inmate files.

I find that Brim did not submit the second attachment with his appeal. On his DOC-91 form, Brim listed three errors that he believed had been committed in his disciplinary hearing. The errors were only succinctly identified, and in four places on the DOC-91, Brim said "Please see attachment." Dkt. 28-2, at 10. The attachment addresses the errors identified on the DOC-91. Neither the DOC-91 nor the attachment makes any reference to Brim's allegation that the conduct report was motivated by retaliation. I find it implausible that Brim's appeal form would not identify the retaliation issue, if indeed Brim had included that second attachment with his appeal. Brim testified that he conceived of the retaliation arguments as separate from the procedural errors on the DOC-91, and that his filing strategy made sense to him at the time. I do not find this explanation convincing.

I do not doubt that Brim was raising such allegations through other channels around this same time. *See* Dkt. 28-3, at 8 (June 5, 2017 ICRS complaint about fabrication of retaliatory conduct report); Dkt. 31-1, at 23–24 (June 19, 2017 letter to warden alleging same). But proper exhaustion requires "utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Brim was required to raise any issues related to the fabricated conduct report at the disciplinary hearing and on appeal to the warden. I find that he did not do so. Brim failed to exhaust his First Amendment retaliation and Fourteenth Amendment substantive due process claims against Stevens and Van Lanen based on their alleged fabrication of the conduct report in June 2017.

## C. Exhaustion though the October 2017 ICRS complaint

In his sur-reply to defendants' summary judgment motion, Brim argued that, even assuming he failed to raise his retaliation claims through the disciplinary hearing process, he nonetheless exhausted them through a subsequent ICRS complaint submitted on October 10,

2017. This complaint primarily concerned an interaction that Brim had with Stevens on October 3, but it also made passing reference to Stevens's fabrication of the conduct report in June 2017. *See* Dkt. 33-1, at 11. That complaint was dismissed per Department of Adult Institutions policy 310.00.01, which requires that complaints about staff misconduct be investigated and decided through a confidential DOC personnel procedure without further participation of the inmate. Brim said that this constituted a dismissal "on the merits," which can exhaust an inmate's claim even if that claim is otherwise procedurally deficient. *See, e.g.*, *Conyers v. Abitz*, 416 F.3d 580, 584–85 (7th Cir. 2005); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Because Brim raised the argument for the first time in his sur-reply, at the *Pavey* hearing I heard argument on the question whether the October 2017 ICRS complaint was dismissed on the merits.

With the benefit of that argument, I am persuaded that the dismissal of Brim's October 2017 ICRS complaint was not "on the merits" and thus did not constitute proper exhaustion. The primary allegation at issue in Brim's ICRS complaint was that Stevens had made inappropriate comments to Brim on October 3. Although Brim's complaint mentioned the June 2017 conduct report fabrication, its chief focus was this separate, more recent allegation. A reasonable reader of the complaint would not construe it as an attempt to challenge the June 2017 conduct report, and indeed, the responses of the reviewing GBCI officials show that they did not interpret it that way. I will not treat such a compound complaint as sufficient to exhaust an obviously untimely grievance. Doing so would open the door to an easy end run around the normal requirements attached to administrative remedies. I conclude that the October 2017 ICRS complaint was not a decision on the merits of a complaint about the June 2017 conduct report, and that it did not exhaust the administrative remedies available to Brim.

ORDER

IT IS ORDERED that defendants' motion for partial summary judgment on exhaustion grounds, Dkt. 26, is GRANTED in part and DENIED in part, consistent with the analysis above.

Entered March 1, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge